## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

v.

MARK ARHEBAMEN,
    a.k.a McMaine Ogeorgia,
    a.k.a McMaine O'Georgia,

           Defendant.

CASE NO. 02-CR-80761
HON. LAWRENCE P. ZATKOFF

_____/

### SENTENCING OPINION

AT A SESSION of said Court, held in the Federal Building
and United States Courthouse, in the City of Port Huron,
State of Michigan, on January 20, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court for a second re-sentencing in the case of *United States v.*

*Arhebamen*, Case No. 02-80761, pursuant to a remand from the Sixth Circuit Court of Appeals. In

its most recent consideration of this matter, the Sixth Circuit Court of Appeals determined that the

appropriate advisory Guidelines range is 84 to 105 months of imprisonment, not 140 to 175 months

as calculated by this Court. On remand, this Court has been instructed to "consider the correct

advisory range and adequately explain its application of the [18 U.S.C.] § 3553(a) factors in

imposing a new sentence."

For the reasons that follow, including the Court's consideration of the new advisory

Guidelines range and the Court's analysis of the sentencing factors enunciated at 18 U.S.C. §

3553(a), the Court imposes a sentence of 152 months imprisonment and four years of supervised release.

## II. BACKGROUND

On December 10, 2003, Defendant was convicted by jury of the following counts contained in the Superseding Indictment:

| | |
|---|---|
| Count 1 | Failure to Appear (18 U.S.C. § 3146); |
| Count 2 | False Claim to U.S. Citizenship (18 U.S.C. § 911); |
| Count 3 | Obstruction (18 U.S.C. § 1503); |
| Count 4 | False Statements (18 U.S.C. § 1001); and |
| Count 5 | False Statements (18 U.S.C. § 1001). |

On April 6, 2004, following a sentencing hearing, the Court sentenced Defendant to a term of imprisonment of 152 months. The sentence of 152 months was in the middle of the range for the term of imprisonment applicable to Defendant pursuant to the U.S. Sentencing Guidelines, as determined by the Court. On the same date, the Court issued a 48-page Opinion and Order, wherein the Court set forth in great detail its reasoning for Defendant's sentence, including the manner of calculating the applicable Sentencing Guideline range for Defendant. Defendant appealed his conviction and sentence to the Sixth Circuit Court of Appeals. On August 18, 2006, the Sixth Circuit issued an opinion affirming Defendant's conviction but vacating his sentence and remanding the matter for sentencing pursuant to *United States v. Booker*, 543 U.S. 220 (2005).[1] On November 16, 2006, the Court conducted a second sentencing hearing in this case and again imposed a sentence of 152 months. At both the April 6, 2004, sentencing and the November 16, 2006, re-sentencing,

---

[1]Following the Sixth Circuit's affirmation of his conviction, Defendant filed a petition for writ of certiorari with the United States Supreme Court. On November 13, 2006, the United States Supreme Court denied Defendant's petition.

Defendant was present and given the opportunity to speak.

### III. NO SENTENCING HEARING

This matter is before the Court for the purpose of a second re-sentencing of Defendant. Since this matter was remanded to this Court by the Sixth Circuit, Defendant filed a Motion Requesting Notification of Resentencing Hearing Date (Docket #219). In asking for a notification of re-sentencing hearing date, Defendant presumes that this Court will hold another hearing to announce this sentence. Due to the circumstances involved in this case, however, the Court concludes: (1) the purposes for having Defendant present (and being given an opportunity to speak) at sentencing have been accomplished, and (2) a third sentencing hearing is not warranted or required.

First, at both sentencing hearings (on August 6, 2004, and November 16, 2006), Defendant was present and the Court gave him an opportunity to speak. On both occasions, the Court heard from Defendant and considered everything that Defendant said. In preparing this Opinion and Order, the Court has reviewed the transcripts of the sentencing hearings and has, once again, considered what Defendant said on both occasions. Second, Defendant already has had two meaningful opportunities to file memoranda regarding his sentence. Third, the Court is not aware of any authority which would bar the Court from issuing a written opinion setting forth the detailed reasoning for this sentence. Fourth, Defendant has not presented any new evidence in mitigation to the Court, nor is the Court relying on any new material in re-sentencing Defendant. *United States v. Denne*, 23 F.3d 408, at *2 (6th Cir. 1994) (Table).

Fifth, Defendant's presence at a hearing would be nothing more than symbolic because he has no right, and he would not be given an opportunity, to allocute even if he were present. *United*

*States v. Jeross*, 521 F.3d 562, 585 (6th Cir. 2008). Sixth, the sentence to be imposed by the Court

at this time is identical to the sentence announced at both prior sentencings; thus, the "new" sentence

will be no more onerous than the original sentence. *Denne*, 23 F.3d 408, at *2. Seventh, this re-

sentencing is for the purpose of ensuring that the Court explain the reasons behind its sentence,

including its consideration of the Section 3553(a) factors, and this Opinion accomplishes that

purpose.   Eighth, bringing Defendant back to this Court from Rochester, Minnesota, would

necessitate an extraordinary amount of the Government's time and expense, as well as create

unnecessary security risks and the need for additional security measures, all relevant concerns in the

absence of the right of Defendant to be present and allocute.

Therefore, for the reasons set forth above, the Court concludes that the interests of justice do

not necessitate or require that Defendant be brought back before the Court to hear the same sentence

announced a third time.  Accordingly, Defendant's Motion Requesting Notification of Resentencing

Hearing Date is DENIED.


## IV. SENTENCE

In determining the appropriate sentence for Defendant, the Court must consider, and the

Court has considered, the following provisions of 18 U.S.C. §3553(a):

> (1)   the nature and circumstances of the offense and the history
>       and characteristics of Defendant;
>
> (2)   the need for the sentence to: (a) reflect the seriousness of the
>       offense, promote respect for the law, and provide just
>       punishment for the offense; (b) afford adequate deterrence to
>       criminal conduct; (c) protect the public from future crimes of
>       Defendant; and (d) provide Defendant with needed
>       educational or vocational training, medical care or other

4

correctional treatment, in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentences and the applicable sentencing range
        pursuant to the Sentencing Guidelines;

(5)     the policy statements issued by the Sentencing Commission
        pursuant to 28 U.S.C. §994(a)(2) that are currently in effect
        and pertinent to Defendant's conduct, including any
        amendments thereto by act of Congress or incorporation into
        the Sentencing Guidelines by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities among
        defendants with similar records who have been guilty of
        similar conduct; and

(7)     the need to provide restitution to the victims of the offenses
        pursuant to which Defendant is being sentenced.

The Court addresses each of the foregoing factors in order below, except that the Court's analysis

of subsections (2) and (6) are discussed last.

**A.      History and Characteristics of Defendant**

*1.      Brief History of Defendant*

In 1977, Defendant entered the United States and was authorized to remain in the United

States until January 1978.  Defendant stayed past the date authorized and was arrested by

Immigration and Naturalization Services on June 27, 1978.  On May 9, 1978, however, Defendant

had married a United States citizen and, as such, the June 27, 1978, arrest did not result in a

conviction.  Since 1978, Defendant has illegally posed as a United States citizen (McMaine Allen

O'Georgia with SSN xxx-xx-2837).  Beginning in earnest in 1991, Defendant used every means at

his disposal to improve his financial position regardless of the obligations imposed upon him by the

state. Between 1991 and 1994, Defendant (under the name MAO Professional Services) prepared

171 false federal tax returns resulting in (a) a twenty-two count indictment on April 7, 1999, and (b) a February 23, 2001, conviction on one count of Aiding and Assisting in the Preparation of a False Federal Income Tax Return, in violation of 26 U.S.C. § 7206(2). In that case, *United States v. O'Georgia*, Case No. 99-80353, Judge Rosen sentenced Defendant to a term of 21 months imprisonment, plus one year of supervised release.

2.   *The Instant Case*

In this case, Defendant was convicted of the five counts listed in Part II above (one count of failure to appear, one count of false claim of U.S. citizenship, one count of obstruction of justice, and two counts of making false statements). In brief, Defendant's convictions in this case resulted from the following conduct. In Count I, Defendant was convicted for failure to appear because he did not show up on July 25, 2001, for his sentencing before Judge Rosen in Case No. 99-80353. Defendant was convicted of the false claim of U.S. citizenship for repeatedly reporting that he was born in the State of Georgia when, in fact, he was born in Nigeria. Defendant was convicted of obstruction of justice for reporting to a U.S. Probation Officer a false name, false social security number and fictitious bachelor's degree, as well as reporting that he had never been a defendant in a civil matter, all for the purpose of influencing, obstructing and impeding the due administration of justice by such Probation Officer. Defendant was convicted of making false statements that he knew to be false by: (1) saying he was born in Georgia, and (2) claiming to have a degree from the University of Oxford.

a.   Perjury at Trial

During the trial in this case, Defendant repeatedly perjured himself. First, Defendant testified that his name is McMaine O'Georgia, that he was born on May 5, 1955, and that he obtained a delayed birth certificate from the state of Georgia using that name and date of birth. Defendant's

6

statements, however, were false and he knew that, for several reasons: (a) when he first arrived in the United States in 1977, Defendant told Immigration and Naturalization Services that his real name was Mark Arhebamen and he was born on March 21, 1953, in Nigeria, and (b) he filed various applications with the Social Security Administration using: (1) variations of the names Mark Arhebamen and McMaine Allen O'Georgia, (2) both March 21, 1953, and May 5, 1955, as his date of birth, and (3) three locations as his place of birth (Ibadan, Nigeria; Albany, Georgia; and Auburn, Georgia).

Second, Defendant falsely testified at trial as to the information he had previously conveyed to Probation Officer Christine Fush during the preparation of the presentence investigation report in the case before Judge Rosen, *United States v. O'Georgia*, Case No. 99-80353. Specifically, Defendant testified that he had informed Ms. Fush that he: (a) previously used the name Mark Arhebamen, (b) used the Social Security Number xxx-xx-7521, and (c) had taken correspondence courses from Oxford University Press, not that he had attended Oxford University as charged in Count V of the Superseding Indictment. Defendant's testimony was directly contradicted by the trial testimony of Ms. Fush.

Third, Defendant testified at trial that he had telephoned Judge Rosen's chambers prior to his July 25, 2001, sentencing in Case No. 99-80353. Defendant testified that he had spoken with Judge Rosen's clerk and that Judge Rosen's clerk had told him that Judge Rosen had received a letter from a Dr. Leigh Dudek Sorokin excusing Defendant from sentencing, not to worry about the July 25, 2001, sentencing, and to focus instead on his health and recovery. Defendant's testimony was directly contradicted by the trial testimony of LaShawn Saulsberry, Judge Rosen's docket clerk at the time.

7

Finally, Defendant testified at trial that he had taken correspondence courses from Oxford University Press. In its March 24, 2004, Sentencing Memorandum, however, the Government submitted the Declaration of John J. Grillos, Senior Vice President of Oxford University Press. In his Declaration, Mr. Grillos indicates that "Oxford University Press has never offered any correspondence courses or conferred any degrees." *See* Grillos Declaration, ¶ 3; Government's Sentencing Memorandum. Accordingly, Defendant's statements regarding Oxford University Press are false. The Court finds that it would have been impossible for Defendant to not know these statements were false, since Oxford University Press has never offered correspondence courses.

    b.    <u>Obstructive Behavior</u>

In addition to the foregoing perjury, Defendant engaged in the following obstructive behavior during the course of the proceedings before this Court. First, prior to his conviction, Defendant filed twelve appeals with the Court of Appeals,[2] only two of which[3] were appeals of appealable orders. In an Order issued April 24, 2003, the Court informed Defendant that, pursuant to 28 U.S.C. § 1291 and subject to limited exceptions, the Court of Appeals only has jurisdiction to hear appeals from "final decisions" of district courts. *See United States v. Arhebamen*, Case No. 02-80761 (E.D. Mich. Apr. 24, 2003) (citing 28 U.S.C. § 1291). The Court also informed Defendant that, for purposes of § 1291 and in the absence of an applicable exception, the "final order" for purposes of § 1291 is the imposition of sentence. Nonetheless, even after the Court's April 24, 2003, Order, Defendant filed numerous appeals from non-appealable orders, each of which was summarily dismissed by the Court

---

[2]*See* Sixth Circuit Case Nos. 03-1479; 03-1480; 03-1481; 03-1482; 03-1483; 03-1627; 03-2512; 03-2513; 04-1102; 04-1103; 04-1105; and 04-1217.

[3]*See* Sixth Circuit Case Nos. 03-1482 and 03-1627.

8

of Appeals. *See, e.g.,* Sixth Circuit Case Nos. 04-1102; 04-1103; 04-1105; and 04-1217.

Second, at a July 23, 2003, Hearing on Defendant's Motion in Limine, and while Defendant was still represented by Mr. Patrick Cleary, Defendant refused to accept documents proffered by his attorney. The Court found Defendant to be in contempt, and issued an order to this effect on August 4, 2003. On September 9, 2003, the Court purged Defendant of this contempt. Third, on November 6, 2003, Defendant filed a Request for the undersigned to Recuse himself. To support his Request, Defendant argued that the undersigned and Judge Rosen were engaged in a conspiracy with a Dr. Thomas Barnett to punish Defendant for defaulting on a previous loan, and that the undersigned was biased against Defendant because the undersigned had learned that Defendant intended to bring a civil suit against him. As stated in the Court's Opinion and Order dated November 20, 2003, the factual basis of Defendant's accusations were false: "Defendant made serious allegations of misconduct by this Court, without regard to the veracity of these allegations." *See United States v. Arhebamen*, Case No. 02-80761 (E.D. Mich. Nov. 20, 2003).

3.  *Prior Criminal Convictions*

Defendant's convictions in this case do not represent his first encounter with the criminal justice system. First, the charges in the instant case generally arose in conjunction with Defendant's conduct during Case No. 99-80353 before Judge Rosen, pursuant to which he pled guilty to and was convicted of one count of aiding and assisting in the preparation of a false income tax return. In fact, as noted above, between 1991 and 1994, Defendant (under the name MAO Professional Services) prepared 171 false federal income tax returns.

In addition to the conviction in front of Judge Rosen and the convictions in this case, Defendant has two convictions in Oakland County Circuit Court stemming from the following

9

activities. On September 25, 1995, Defendant wrote a check to Executive Pools, Inc., for $603.66. The check was returned for insufficient funds. On October 25, 1995, Defendant cashed a check for $7,500.00 at a Standard Federal Bank in West Bloomfield. The $7,500.00 check was written on a Comerica Bank Account that had been closed on September 25, 1995. Defendant was arrested for both of these offenses on March 28, 1996, and he pled guilty to both offenses on January 10, 1997, before the Honorable John J. MacDonald of the Sixth Circuit Court for Oakland County, Michigan. On May 19, 1997, Judge MacDonald sentenced Defendant to a one-year suspended jail term in each case and imposed victim's rights fees and attorney fees. Judge MacDonald also ordered that Defendant pay restitution to Standard Federal Bank in the amount of $4,034.32 for Defendant's offense that occurred on October 25, 1995.

    *4.    Civil Actions*

    Defendant has been a party to several civil suits in the Oakland County Circuit Court, the 52-3 District Court in Rochester, Michigan, and the Northwest Phoenix Justice Court in Phoenix, Arizona. Judgments have been entered against Defendant and his company, MAO Professional Services. The total amount of monetary judgments entered against Defendant was $159,245.15. In addition, on December 15, 1995, Defendant was ordered to pay child support for the four children he had with Eleanor Washington. On February 15, 2001, Defendant was arrested for failure to pay this child support. Despite this arrest (and despite the December 15, 1995, court order), Defendant has still not made any child support payments for his four children and owes in excess of $283,773.23 in child support (this was the amount due when Defendant was sentenced in April 2004, and the Court is not aware of any payments Defendant has made since then).

**B.      Kinds of Sentences Available**

In this case, Defendant is not eligible for probation; a sentence of imprisonment is available.

**C.      Applicable Advisory Guidelines Range**

As noted above, the Sixth Circuit Court of Appeals has determined that the applicable advisory Guidelines range for Defendant is 84 to 105 months imprisonment.   As discussed throughout this Opinion and Order, the Court finds that a sentence within the advisory Guideline range would be inadequate to satisfy the purposes of § 3553(a).

**D.      Policy Statements**

The Court has considered the policy statements issued by Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2) that are currently in effect and pertinent to Defendant's conduct. The Court does not find any of the policy statements inadequate or otherwise objectionable. Accordingly, the Court's ruling is not based on any disagreement(s) with such policy statements.

**E.      Restitution to Victims**

Defendant's convictions for False Claim to U.S. Citizenship, Obstruction of Justice and False Statements harm society in a number of ways.   The societal interest protected by 18 U.S.C. § 911 (False Claim to U.S. Citizenship) is the sovereign's interest in establishing uniform rules of naturalization. *See United States v. Anzalone*, 100 F. Supp. 987, 988 (W.D. Pa. 1951), *rev'd on other grounds*, 197 F.2d 714 (3d Cir. 1952).   Defendant harmed this societal interest on February 23, 2001, by falsely claiming to Judge Rosen that he was a United States citizen.   The societal interest harmed by Defendant's March 2, 2001, false statements and obstruction of justice is the proper conduct of the United States Probation Office.   Nonetheless, in this case, there are no "identifiable victims." Accordingly, the Court concludes that restitution is not an appropriate remedy

11

or sentencing tool with respect to the offenses for which Defendant has been convicted in the instant case.

**F.      A Disparate Sentence is Warranted**

After: (1) reviewing transcripts of both hearings and considering the arguments of the parties at such hearings, including everything that Defendant said, (2) again reviewing and considering the sentencing memoranda filed by each party, and (3) undertaking careful consideration of all other relevant matters, including Defendant's history and characteristics detailed in Section IV.A.; the advisory Guidelines; and the other relevant Section 3553(a) factors, the Court concludes that a sentence within the advisory Guidelines range is not appropriate for Defendant. In reaching that conclusion, the Court finds that there are several factors which take the instant case out of the heartland of cases contemplated by the Sentencing Guidelines, thereby justifying a disparate sentence for Defendant.

*1.      False Statements*

While the Guidelines take into account that more than minimal planning exists where false statements occur over a period of time, the extent (going back over twenty years) and nature (being used to assume the fictitious identity of a United States Citizen) of Defendant's false statements are well beyond the normal case. In other words, Defendant's false statements involved "more planning than is typical for commission of the offense in a simple form." Specifically, Defendant began using the name McMaine Allen O'Georgia and applied for SSN xxx-xx-2837 after he was arrested in 1978 by Immigration and Naturalization Services. Defendant has been using this identity to illegally

12

remain in the United States ever since.[4]

In addition, Defendant falsely claimed he was born in Albany, Georgia, on May 5, 1955. Defendant made this statement in order to conceal the fact that he was not a United States citizen, and did so in an attempt to conceal the commission of another offense, *i.e.*, he lied about his citizenship during his guilty plea before Judge Rosen. Accordingly, the Court finds that Defendant's false statements were not isolated, "purely opportune" false statements. Rather, Defendant's false statements have been part of an extensive plan calculated to create the identity of an individual named McMaine Allen O'Georgia, who had been born in Georgia, and conceal his true identity, Mark Arhebamen, who was born in Nigeria.

### 2.    *Perjury*

As discussed in Section IV.A.2.a., not only did Defendant commit the crimes for which he was charged, he also perjured himself with respect to Counts III-V during his trial testimony. In other words, Defendant's pattern of lies continued throughout the criminal proceedings in this case.

### 3.    *Obstructionist Behavior*

The extent of Defendant's willful and obstructive behavior is not adequately taken into consideration by the Sentencing Guidelines, for several reasons.

First, Defendant provided false information to the Probation Department regarding his name, date of birth, place of birth, citizenship, education, history of lawsuits, employment, and history of mental health treatment. Although some level of investigation is incumbent upon the Probation Department when verifying information during the normal preparation of a presentence investigation

---

[4]For example, as noted above, Defendant attempted to conceal his use of the name Mark Arhebamen from Probation Officer Christine Fush. Defendant also tried to conceal his use of the name Mark Arhebamen from his fourth wife, Tammy Squaire, his wife at the time of trial.

13

report, Defendant's conduct in this case significantly increased the expenditure of resources required. For example, due to the magnitude of Defendant's false statements, the Probation Department was unable to verify Defendant's identity by simply submitting the appropriate request for information to the relevant agencies and organizations. Instead, the Probation Department had to contact many different government agencies and conduct an extensive and exhaustive investigation. As such, the expenditure of time and money verifying Defendant's true identity demanded an unnecessary expenditure of substantial court resources.

The Court also notes that Defendant objected to the statement in the presentence investigation report that he attended the University of Oxford, despite the fact that Probation Officer Christine Fush testified that Defendant told her that he had attended the University of Oxford. Defendant instead claimed to have taken correspondence courses from Oxford University Press but that wasn't true, either. As discussed above, "Oxford University Press has never offered any correspondence courses or conferred any degrees." In other words, rather than acknowledge that the representation about the University of Oxford was a lie, Defendant responded by telling another lie, thereby requiring further investigation.

Second, Defendant misled Dr. Janet Heasley and Dr. Leigh Dudek Sorokin about his background and circumstances, then used letters from Dr. Heasley and Dr. Sorokin to manipulate proceedings before Judge Rosen to avoid being sentenced. More specifically, on February 23, 2001, Defendant pleaded guilty before Judge Rosen to one count of Aiding and Assisting in the Preparation of a False Tax Return, and sentencing was scheduled for June 28, 2001. On June 25, 2001, Defendant approached Dr. Heasley and requested that Dr. Heasley address a letter to Judge Rosen excusing Defendant from any court proceedings. Defendant misled Dr. Heasley into believing that

14

he was merely under indictment (in fact, Defendant had already pleaded guilty and was awaiting

sentencing). Defendant also denied ever having had any previous legal problems or ever having been

in jail, despite his extensive criminal history and previous incarcerations. Dr. Heasley complied with

Defendant's request, and on June 25, 2001, faxed a letter to Judge Rosen's chambers. Dr. Heasley

recommended that Defendant not attend court proceedings until he was stabilized and indicated that

Defendant's next appointment was scheduled for July 11, 2001.

After receiving Dr. Heasley's letter, Judge Rosen adjourned sentencing until July 25, 2001.

*See* June 25, 2001, Heasley Letter; Defendant's March 4, 2003, Motion Requesting this Court

Recuse Itself and for Change of Venue. Rather than attend his July 11, 2001, appointment with Dr.

Heasley, however, Defendant relocated to Arizona. Once there, Defendant solicited a letter from Dr.

Sorokin excusing Defendant from any court proceedings. Just as Defendant had misled Dr. Heasley,

Defendant misled Dr. Sorokin into believing that he was merely being investigated for fraudulent

activity and failed to disclose that he was scheduled to be sentenced on July 25, 2001. *See* July 23,

2001, Sorokin Letter; Defendant's March 4, 2003, Motion Requesting this Court Recuse Itself and

for Change of Venue.[5] On July 24, 2001, Dr. Sorokin faxed a letter to Judge Rosen's chambers

recommending that Defendant be excused from any court proceedings.

---

[5]On September 11, 2001, and again on October 8, 2001, after Defendant had been
arrested in Arizona and extradited to Michigan, Defendant again requested that Dr. Heasley
submit letters to the Court recommending that he be released from jail. Defendant ended his
September 11, 2001, request by stating "p.s. I am counting on you for a strongly convincing letter
to the judge ASAP." *See* Defendant's September 11, 2001, Letter; Government's Trial Ex. 34.
When Dr. Heasley refused to comply with Defendant's request, Defendant sent another letter to
Dr. Heasley but significantly changed his tone. Defendant informed Dr. Heasley that he was
"bitterly disappointed" with her, that he wrote to her with "grave concern," and requested that Dr.
Heasley sign and submit to Judge Rosen a "Psychiatrist's Affidavit in Support of Motion to
Withdraw Plea of Guilty – Federal" which Defendant had prepared himself. *See* Defendant's
October 8, 2001, Letter; Government's Trial Ex. 35.

15

By his conduct, Defendant misled Dr. Heasley and Dr. Sorokin and actively solicited their unknowing assistance in his attempts to avoid being sentenced by Judge Rosen. To a certain extent, Defendant was successful because he was able to convince Judge Rosen to adjourn sentencing from June 28, 2001, to July 25, 2001. Thus, Defendant's conduct resulted in the significant disruption of a Government function (*i.e.*, the timely sentencing of Defendant). The Court also notes that Defendant undermined Judge Rosen's efforts at (a) recognizing legitimate concerns of criminal defendants, and (b) maintaining a level of flexibility in requiring defendants to appear before him. Accordingly, the Court concludes that the manipulation of Dr. Heasley and Dr. Sorokin, and the corresponding adjournment of sentencing, constitute unusual aggravating circumstances that were not adequately considered by the Sentencing Commission in formulating the Sentencing Guidelines.

Third, not only did Defendant fail to appear before Judge Rosen for sentencing on July 25, 2001, in Case No. 99-80353, Defendant relocated to Arizona. This aggravating circumstance (leaving the Court's jurisdiction, thereby necessitating additional Government resources, personnel, etc.) does not appear to have been adequately taken into account by the Sentencing Commission in formulating the Sentencing Guidelines.

For the foregoing reasons, the Court concludes that Defendant's obstruction departs significantly from the typical case because of (1) the multiple instances of obstruction, and (2) the seriousness of Defendant's obstruction.

4.      *Conclusion*

As discussed above, the Court finds that Defendant's conduct clearly and unequivocally takes this case out of the heartland of cases considered by the Sentencing Guidelines. Accordingly, the Court concludes that sentencing Defendant to a term of imprisonment within the advisory Guidelines

16

range would result in a disparity of sentencing, both as to Defendant and as to the average offender convicted of the crimes Defendant committed. More acutely, the advisory Guidelines are designed to impose a reasonable sentence that is sufficient, but not greater than necessary, to provide just punishment for the offense committed. If Defendant, in light of the egregiousness of his conduct and behavior, is sentenced within the advisory Guidelines range, the average defendant would be unduly and unreasonably punished by getting a similar sentence. Of course, that should not be the case because the Court is supposed to sentence the typical, "run of the mill" defendant within the advisory Guideline range. Thus, it is only logical that an offender such as Defendant, who has consistently and severely manipulated, abused and thumbed his nose at the laws of this country and the judicial system in a manner not contemplated by the Sentencing Commission, be given a sentence in excess of the advisory Guidelines range. Accordingly, in order to avoid unwarranted sentence disparities by sentencing Defendant to a term of imprisonment similar to what the "typical" offender would receive, the Court concludes that a sentence in excess of the advisory Guidelines is appropriate and necessary.

**G.     Satisfaction of the Purposes of Sub-section (2)**

> *1.     Need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense*

In this case, the Court finds that each of the offenses for which Defendant was convicted is significant and of a very serious nature in itself, for the reasons set forth in great detail above. When the entirety of Defendant's conduct is considered together, however, the Court is struck by the extensiveness and history of the planning that has gone into Defendant's false claim to the identity of McMaine Allen O'Georgia. Defendant lied about his identity for over 20 years before he was

17

charged in this case. He repeatedly misrepresented his identity to government officials and agencies, as well as to at least one of his spouses. When he was charged with and pled guilty to a federal crime for aiding and assisting in the filing of false income tax returns before Judge Rosen in Case No. 99-80353, Defendant's criminal conduct only escalated. Although he pled guilty in that case, Defendant repeatedly lied to Judge Rosen and Christine Fush, the Probation Officer assigned to that case. In that case, he misrepresented his name, age, place of birth, social security number and citizenship, over and over, just as he had since 1978. Moreover, all of these actions were calculated to further another crime, living in the United States illegally. Accordingly, the Court believes that the seriousness of Defendant's conduct takes this case out of the heartland of cases and warrants and necessitates a sentence greater than that provided for by the advisory Guideline range.

The Court also notes that, in this case, it does not simply rely on a presentence investigation report prepared by the Probation Department in considering Defendant's criminal activity and obstructionist conduct. The undersigned presided over the trial and all of the proceedings in this matter. The undersigned also watched Defendant testify at trial and, in listening to Defendant testify, was able to reach the same conclusion regarding Defendant's testimony as the jury must have, *i.e.*, that Defendant was not credible. The Court observed Defendant's repeated and consistent lies and pattern of obstructionist behavior, as well as his propensity to obstruct all those involved in uncovering his life of dishonesty and deceit, including, without limitation, the Probation Department. In other words, the Court was privy to Defendant's proclivity to fabricate and his efforts to further the false identity he created, as well as his obstructionist behavior.

Significantly, the Court notes once again that the lies and obstructionist behavior for which Defendant was charged and convicted were not isolated, one-time or simply opportune events.

18

Rather, the conduct which resulted in the charges in this case is simply representative of the manner in which Defendant has lived his life since 1978 (at least). Since then, his actions and conduct have been designed to mislead, and he has successfully misled, persons and agencies with whom he interacted as to his identity. Accordingly, the Court concludes that (a) only a sentence above the advisory Guideline range will reflect the seriousness of the offense, and (b) such a sentence is necessary to communicate to this Defendant that his pattern of criminal conduct is extreme and unacceptable, something that clearly has not been understood by Defendant, as reflected by his continued lies and obstructionist behavior throughout the prosecution of this case. Moreover, based on Defendant's consistent disregard for the laws of this country, as evidenced generally by remaining in the United States illegally and specifically by his numerous criminal offenses detailed above, a sentence in excess of the advisory Guideline range is necessary to promote respect for the law. Finally, based on the extensiveness and history of Defendant's criminal conduct in carrying out his calculated plan to conceal his true identity, the Court finds that only a sentence in excess of the advisory Guideline range can provide just punishment for the offenses committed by Defendant.

 2. *Need for the sentence to afford adequate deterrence to criminal conduct*

  Based upon the nature of Defendant's criminal history, and the likelihood that Defendant will recidivate, the Court concludes a sentence within the advisory Guidelines will not adequately deter Defendant from future criminal activity. The Court's conclusion is based on Defendant's past and present misconduct, which demonstrate a proclivity for dishonesty and deceit, as well as a wanton disregard for the rule of law and the responsibilities imposed upon an individual by society.

  Therefore, the Court believes that sentencing this Defendant to a limited prison term (*i.e.*, one within the advisory Guidelines range) will not provide an adequate deterrence to future criminal

conduct for this Defendant. Defendant apparently has lived under the belief that the potential benefits to his criminal activity outweigh the risk to him of engaging in such conduct as none of the previous convictions or sentences have deterred Defendant from resuming a life of crime.

      *3.     Need for the sentence to protect the public from future crimes of Defendant*

      In this case, imprisoning Defendant for a limited period will not protect the public from future crimes of Defendant. As discussed previously, Defendant has been engaged in the preparation of false income tax returns and criminal activity since 1991 (when not incarcerated), and he has illegally remained in the United States and concealed his identity since 1978. Many of his crimes have had identifiable victims, while some of the other crimes for which Defendant has been convicted have involved many levels of victims (including society at large, as well as the judicial and probation systems specifically). For these reasons, the Court believes a sentence beyond the advisory Guidelines range is necessary to protect the public, both specific individuals and society at large.

      A sentence in excess of the advisory Guidelines would protect the public from future crimes of Defendant in two ways. First, while incarcerated, Defendant will not have the same capacity to prey upon others or subject them to his criminal acts. Second, the Court believes that an extended period of imprisonment will afford Defendant opportunities to receive correctional treatment (should he elect to pursue them), so that he can live in society in a legal manner.

      *4.     Need for the sentence to provide Defendant with needed educational or vocational training, medical care or other correctional treatment, in the most effective manner*

      While the Court hopes that Defendant will take advantage of his time in prison to obtain correctional treatment and skills to live in a legal manner, the Court does not rely on this factor in

20

making its determination regarding Defendant's sentence.

**H.    Conclusion**

Pursuant to 18 U.S.C. § 3553(a), this Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. For the reasons set forth in this Sentencing Opinion, the Court finds that a sentence of 84 to 105 months would not promote Defendant's respect for the law, reflect the seriousness of the offenses for which Defendant was convicted, deter Defendant from future criminal activity or protect the public from future crimes of Defendant.

In this case, after reviewing and considering Defendant's conduct, the purposes set forth in 18 U.S.C. § 3553(a)(2), and the factors set forth in § 3553(a)(1) and (a)(3)-(7), and for the reasons set forth above, the Court imposes upon Defendant a "total punishment" of a term of imprisonment of 152 months because such a sentence would best serve the goals of Section 3553(a). The 152 months of imprisonment is calculated as follows:

1.    Defendant's sentence as to Count I (Failure to Appear) is 12 months imprisonment to be served consecutively to every other sentence. *See* U.S.S.G. § 2J1.6 cmt. N. 3.

2.    Defendant's sentence as to Count II (False Claim to U.S. Citizenship) is 20 months imprisonment.

3.    Defendant's sentence as to Count III (Obstruction of Justice) is 120 months imprisonment, and is to be served consecutively to every other sentence.

4.    Defendant's sentence as to Count IV (False Statements) is 20 months imprisonment.

21

placement in a maximum security prison and that Defendant be closely monitored as the Court feels he is a danger not only to other inmates but also to Bureau of Prisons personnel, because of his lack of regard for the truth and his ability to manipulate any situation.

Finally, the Court imposes a four-year term of supervised release for Defendant.

## V. CONCLUSION

Accordingly, and as set forth above, it is HEREBY ORDERED that Defendant is COMMITTED to the Custody of the United States Bureau of Prisons to be imprisoned for a term of 152 months. Defendant shall be given credit for the time he has served since his original sentencing on April 6, 2004. In addition, for the reasons stated above, the Court hereby ORDERS that Defendant's Motion Requesting Notification of Resentencing Hearing Date is DENIED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: January 20, 2010

22